# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00064-MR

| | |
|---|---|
| RAY WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 13].

## I.   PROCEDURAL HISTORY

The Plaintiff Ray Williams filed a protective applications for a period of disability, disability insurance benefits, and supplemental security income on September 14, 2012, alleging an onset date of November 2, 2010. [Transcript ("T.") 186-96]. The Plaintiff's claim was denied initially and on reconsideration. [T. 130-34, 138-46]. Upon the Plaintiff's request, a hearing was held on February 24, 2014, before Administrative Law Judge Marshall D. Riley ("ALJ Riley"). [T. 34-55, 147-48]. On June 23, 2014, ALJ Riley

issued a decision denying the Plaintiff benefits. [T. 15-29]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might

2

accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1,

Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

**IV.   THE ALJ'S DECISION**

In denying the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that he has not engaged in substantial gainful activity since the alleged onset date of November 2, 2010.  [T. 20].  The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: degenerative disc disease, hypertension, affective disorder, anxiety disorder, and polysubstance abuse.  [T. 20-21].  The ALJ determined that none of Plaintiff's impairments, either singly or in

combination, met or equaled a listing. [T. 21-23]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 23-27], finding that the Plaintiff had the RFC to perform medium work with the following limitations:

> [T]he claimant should be . . . limited from performing more than frequent climbing ladders, ropes, or scaffolds, as well as balancing and stooping. Mentally, the claimant retains the mental capacity for simple routine repetitive tasks in a low stress setting with minimal social demands.

[T. 23]. Based on this RFC, the ALJ then determined that the Plaintiff could not perform any past relevant work. [T. 27]. The ALJ further concluded that, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [T. 27-29]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the amended alleged onset date through the date of her decision. [T. 29].

**V.    DISCUSSION**

The Plaintiff presents two primary assignments of error. First, the Plaintiff argues that the ALJ did not perform a function-by-function analysis of the Plaintiff's contested ability to walk, stand and sit, as required by Social Security Ruling (SSR) 96-8p. Second, the Plaintiff argues that the ALJ failed to account in the RFC for the Plaintiff's moderate difficulties with

5

concentration, persistence or pace. The Court will address each of these issues in turn.[1]

### A. Function-by-Function Analysis

Residual functional capacity (RFC) is an administrative assessment by the Commissioner of what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c). In assessing a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those non-severe impairments, after considering all of the relevant evidence in the record. 20 C.F.R. § 404.1545(a). In determining a claimant's RFC, the ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1. The ALJ also must include a narrative discussion detailing how the evidence in the record supports the RFC assessment. Id. at *7. Only after a function-by-function analysis has been completed may an RFC be expressed in terms of the exertional levels of work. Mascio v. Colvin, 780 F.3d at 632, 636 (4th Cir. 2015).

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

In Mascio, the Fourth Circuit held that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Mascio Court declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. (citation omitted).

In the present case, the ALJ failed to conduct an explicit function-by-function analysis of the Plaintiff's ability to sit, stand, and walk – all of which were contested, relevant functions in this case. While the Plaintiff claimed that he was severely limited in his ability to sit, stand, and walk, the ALJ found him capable of exertionally demanding medium work with lifting 50 pounds and sitting, standing, and walking without the use of a cane up to six hours during an eight-hour workday.

In making that finding the ALJ gave "great weight" to the non-examining agency consultants [T. 26], one of whom opined that the Plaintiff could perform the full range of medium work and one of whom opined that the Plaintiff could perform medium work with certain climbing, balancing, and

stooping limitations. [T. 25, 64-76, 78-90, 94-110-, 111-27].[2] The ALJ found that these opinions were "consistent with the evidence of record, including treatment records and consultative examinations." [T. 26]. The medical evidence of record, however, contains multiple references to the Plaintiff's pain being persistent, resistant to treatment and exacerbated by walking, standing and sitting for prolonged periods of time. In June 2011, the Plaintiff was hospitalized at the Veterans' Administration Hospital ("VA") for severe depression because of his inability to work due to pain running down his right leg. [T. 341-42]. A prior MRI showed a broad based disc protrusion at L5-S1 narrowing the neural foramen in association with hypertrophic changes of the facet joints. [T. 354]. The Plaintiff started pain management with the VA in August 2012 undergoing a series of epidural steroid injections at the L5 level of his spine. [T. 390]. In a follow-up appointment, it was noted that he had no significant pain relief from these procedures. It was further noted that, despite the use of pain medication, "the pain level is enough to interfere with his functional capacity." [T. 378]. He was diagnosed with lumbar disc displacement and spondylosis. [Id.].

---

[2] The only consultant to have performed an examination of the Plaintiff did not offer any opinions regarding the Plaintiff's functional limitations. [T. 410-13].

The Plaintiff underwent another steroid injection at the L5 level of his spine on August 27, 2012. [T. 366]. In a follow-up appointment on September 4, 2012, his doctor noted "he is still experiencing a significant amount of pain in his right leg. He has received treatment over the past few weeks for the pain but states it only lasts a few days." [T. 364]. It was also noted that the Plaintiff's chronic depression was exacerbated by these events as he became hopeful of improvement, but depressed when the treatments never provided him lasting relief. He was also becoming increasingly depressed by his continued inability to sustain work. [Id.].

On September 18, 2012, it was noted of his spinal injections, "he feels he has not really had any long-term benefit. He rates his pain at about 8-9/10 in severity. He has been continuing to use [T]ramadol for relief." [T. 353-54]. On exam, he displayed positive straight leg raising, was tender at L5, had sensory disturbance in the right leg and muscle weakness due to pain inhibition. [Id.]. He was assessed with lumbar disc displacement, lumbosacral spondylosis and right leg radicular pain. A possible surgical evaluation was discussed but the Plaintiff declined. A possible third steroid injection was discussed, but the doctor decided to defer any further interventional treatment "given that he has not really benefitted [from two injections] thus far." [T. 355].

In October 2012, the Plaintiff expressed frustration with the lack of relief from injections which in turn increased his stress levels and depression. [T. 350-52]. It was also noted he stopped working because he could not stand to be on his feet long with his radiculopathic leg pain. [T. 511]. Despite having minor relief from oral pain medications, he reported "still experience[ing] significant pain most of the time." [T. 509]. These complaints of unrelenting leg pain continued in his December 2012 follow-up appointment with the VA. [T. 499]. In January 2013, Mr. Williams intimated that "it's been pretty bad" with increased pain with resulting decreased sleep, achieving only four to five hours per night. He even reported having fleeting thoughts of death while in pain but did not plan to kill himself. [T. 485].

On March 8, 2013, the Plaintiff underwent a consultative physical exam with Dr. Annie Jackson, wherein his neurological signs were noted to be intact, but that he walked with a narrow based gait with some limping and was unable to tandem walk or hop on one foot. [T. 411-12]. A lumbar spine X-ray taken that same day confirmed L5-S1 spondylosis, spondylolisthesis and facet arthropathy. [T. 408]. On April 5, 2013, the Plaintiff requested an ambulatory aid. In response to this request, his treating physician prescribed the Plaintiff a cane and advised him to visit the physical therapy department to be fitted for it. [T. 457].

Follow-up notes later in 2013 and into 2014 continued to show that the Plaintiff was unable to obtain significant relief from his pain with treatment. In May of 2013, it was noted that he continued to experience severe pain from neuropathy in his leg. He noted his pain prevented him from being able to sleep soundly and for long periods of time. [T. 440]. In July 2013, VA medical records indicate that the Plaintiff did not feel his medications were helping his depression and that his physical pain continued to interfere with his mental well-being. [T. 600]. It was noted in August 2013 that he continued to use a cane to take pressure off of his back and that his low back pain with radiation into his right buttock and leg was worse with activity (consistent with his testimony). It was noted that steroid injections were of no benefit and that Tramadol provided only some relief. [T. 596]. An X-ray of his lumbar spine performed a few days later confirmed moderate narrowing of the L5 and S1 disc space with small marginal osteophytes as well as facet arthropathy at L4-L5 and L5-S1 which was "marked" at L5-S1. [T. 570].

In September 2013, VA records indicate that the Plaintiff continued to have low back pain which radiated into his right hip and legs. He also complained of pins and needles sensations and weakness in those locations. His functional limitations included walking distances. On exam, he displayed an antalgic gait, used a cane on the right side, and had pain with range of

11

motion, reduced strength 4/5 in lower extremities in all planes, generalized tenderness and a negative SLR. [T. 590]. His physical therapist included his use of a cane in setting goals. [T. 591]. The Plaintiff did not obtain much relief from his physical therapy exercises as noted during a follow-up examination. [T. 588]. In November 2013, VA records again indicate that the Plaintiff was not able to sleep well due to pain and numbness in his legs. [T. 581].

The ALJ discounted this medical evidence, finding that the Plaintiff had "not received the type of treatment one would expect from a completely disabled person." [T. 27]. The ALJ further noted that the records indicated that the Plaintiff's treatment had been "generally . . . routine and conservative in nature." [Id.]. The ALJ fails to explain, however, what type of treatment a "completely disabled person" would be expected to receive under the circumstances. The ALJ further fails to explain how the prolonged (and apparently unsuccessful) use of narcotic medications, physical therapy, and steroid injections constituted "routine and conservative" treatment or how such treatment would be indicative of a non-disabling condition.

The ALJ also discounted the Plaintiff's use of a cane, noting that the Plaintiff had requested it. While the ALJ is correct that the Plaintiff had requested the device, the records indicate that the Plaintiff's treating

physician prescribed the device and referred him for a fitting. The ALJ further found that there was "little objective evidence to support the finding that the [Plaintiff] actually requires the device." [Id.]. The ALJ, however, does not cite to any specific part of the record to support this assertion. On the contrary, there is evidence to suggest that the Plaintiff regularly used the cane to walk and to relieve pressure from his lower back and right leg. [See e.g., T. 418, 437, 447, 591, 596]. The consultative examiner noted the Plaintiff had a mild limping gait when not using his cane. [T. 411]. Further, in April 2013, a physical therapist noted that the Plaintiff was ambulating with an antalgic gait pattern and that he required gait training with the use of his cane. [T. 450]. The ALJ erred in failing to address this evidence and account for the Plaintiff's use of a cane to ambulate.

The ALJ also discredited the Plaintiff's complaints of pain, solely on the grounds that the Plaintiff had performed some day jobs after the alleged onset date. While conceding that the Plaintiff's work activity did not constitute disqualifying substantial gainful activity, the ALJ found that such activity "indicate[d] that the [Plaintiff's] daily activities have, at least at times, been somewhat greater than the [Plaintiff] has generally reported." [T. 26-27]. In so finding, the ALJ failed, however, "to build an accurate and logical bridge from [this] evidence to his conclusion" that the Plaintiff's complaints of

pain were not credible. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation and internal quotation marks omitted). Specifically, the ALJ failed to give any consideration to the numerous medical notes that indicate that the Plaintiff attempted various day jobs but was unable to sustain any work activity due to his chronic back and leg pain. [See T. 350, 352, 364, 385-86, 418, 451-52, 469, 499, 511]. As the Plaintiff's doctor noted in August of 2012:

> Veteran expresses preference to work vs. draw disability; however he does have ongoing pain with his legs that can interfere with his ability to sustain employment. Will continue to assess his success with employment and/or need for disability income if unable to work.

[T. 387]. If anything, the fact that the Plaintiff kept trying to work but was never able to sustain it due to back and leg pain is an indication of both his willingness to work and his inability to do so -- not an indication of his lack of credibility. The ALJ does not discuss the Plaintiff's stated reasons for repeatedly quitting these jobs or his stated desire to sustain employment, nor does he explain how the Plaintiff's behavior in seeking (unsuccesfully) to maintain his employment undermines his credibility. On remand, if the ALJ decides to discredit the Plaintiff's complaint of disabling pain, "it will be incumbent on him to provide a clearer explanation of his reasons for doing

14

so, such that it will allow meaningful review of his decision." Monroe, 826 F.3d at 190.[3]

In sum, there is substantial evidence of record to indicate that the Plaintiff's pain caused him difficulty in sitting, standing, and walking, which was not adequately addressed in the ALJ's decision. While the ALJ does not have to incorporate every piece of medical evidence into the decision, the ALJ must explain his decision adequately so that the Court may engage in a meaningful review. On remand, the ALJ should conduct a function-by-function analysis in accordance with the directives of SSR 96-8p, with particular attention to the exertional requirements of walking, sitting, and standing relevant to the performance of medium work.

## B. Mental RFC

To account for the Plaintiff's moderate difficulties with concentration, persistence, and pace, the ALJ limited the Plaintiff to "simple routine

---

[3] The ALJ's perfunctory credibility analysis is particularly problematic in light of the fact that it is unclear whether the ALJ who held the hearing and actually had the opportunity to observe the Plaintiff was the one authored the decision at issue. The Plaintiff's hearing was held before ALJ Riley, but the decision was signed by ALJ Schwartzberg "for ALJ Riley." [See T. 29]. The Commissioner argues that pursuant to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), the Hearing Officer Chief ALJ ("HOCALJ") is authorized to sign a final decision on behalf of an ALJ if that ALJ gives the HOCALJ written authorization to do so. The Commissioner concedes, however, that she cannot confirm that ALJ Schwartzberg was the HOCALJ or acting in that capacity when he signed the decision. [Doc. 14 at 10 n.3]. Thus, it unclear from the record who actually authored the final decision.

repetitive tasks in a low stress setting." [T. 23].[4]  The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).  Because "the ability to perform simple tasks differs from the ability *to stay on task*," Mascio, 708 F.3d at 638 (emphasis added), an RFC limited to simple, routine tasks or unskilled work fails to adequately account for moderate limitations in concentration, persistence, and pace.

While limiting the Plaintiff to "simple, routine, repetitive tasks," the ALJ set an additional limitation of a "low-stress setting."  [T. 27].  The ALJ, however, fails to explain this term or how it accounts for any of the Plaintiff's moderate limitations in concentration, persistence, and pace.  The majority of North Carolina federal courts which considered this issue post-Mascio has concluded that an RFC limited to simple, routine tasks or unskilled work in a "low stress" or "non-production" environment, without more, fails to adequately account for moderate limitations in concentration, persistence, and pace.  See Franklin v. Colvin, No. 5:14-cv-84-MOC-DLH, 2016 WL

---

[4] The ALJ also included the non-exertional limitation of "minimal social demands," which was included presumably in order to account for the ALJ's finding that the Plaintiff also has moderate difficulties in social functioning.  [T. 21-22, 23].

16

1724359, at *6 (W.D.N.C. Apr. 29, 2016) (holding that limiting RFC to "simple, one-step tasks in a low stress work environment, defined as one that does not involve production/assembly-line/high speed work or contact with the public" did not adequately address claimant's moderate limitations in concentration, persistence and pace); Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *5-6 (E.D.N.C. Aug. 13, 2015) (holding that limitation to simple, routine, repetitive tasks in low production environment did not adequately address claimant's moderate limitations in concentration, persistence and pace); Hagerdorn v. Colvin, No. 2:12-cv-29-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, did account for some of claimant's mental limitations, such as the ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); Raynor v. Colvin, No.

5:14-CV-271-BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); Salmon v Colvin, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace and did not address her ability to say on task); but see Linares v. Colvin, No. 5:14-cv-120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing Mascio where ALJ limited claimant to simple, routine, repetitive tasks but also limited her to a stable work environment at nonproduction pace with only occasional public contact because the nonproduction pace addressed her limitations in pace and the stable work environment with only occasional public contact addressed her limitation in concentration and persistence). The Court agrees with these decisions and concludes that a remand is necessary in order for the ALJ to give further consideration of the impact of the noted

moderate limitations in concentration, persistence, and pace on the Plaintiff's ability to engage in sustained work activity.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**, and the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 8, 2017

Martin Reidinger
United States District Judge